In this matter, my client, the appellant Mr. Tarwater, was punished with the harshest penalty available to the district court judge. He was deprived of the opportunity to defend himself on the merits of this case. And that order of default that the court entered was violative of his due process rights, as well as a plethora of well-established law in this circuit, including well-reasoned cases. Well, you make it sound like the judge just willy-nilly decided to do this. He had quite a factual record in front of him. Well, Your Honor, the record primarily consisted of testimony that Mr. Tarwater gave at a brief evidentiary hearing, at which point in time I think it's important to establish and to note that Mr. Tarwater was a very unsophisticated litigant. He was a very unsophisticated person in terms of his tech abilities. He testified to that at his deposition. Well, but he understands the sentence, do not delete anything, no matter how unsophisticated he is. Correct? I think so, probably. But here's the problem with that. And I think it's important to distinguish. And what happened in the court below was the computers at issue were continually conflated, both by the court and by very skilled counsel for Roadrunner. The computer at issue by the time of this default hearing was a computer that Mr. Tarwater purchased four months after he left Roadrunner's employment. It was not a computer that he used or had. Okay. It was the two that he had before he left that were allegedly stolen, right? Correct. And you're talking about one that he got after. Yes, because the stolen laptops, one of which the evidence in the record established belonged to him, the other of which it appears belonged to Roadrunner, but that isn't even clear. Well, the one you said belonged to him, he'd been reimbursed for it. So the suggestion is it didn't belong to him, it belonged to Roadrunner. He was reimbursed, and then the company issued him a 1099. Whatever that means to Mr. Tarwater, that meant that he owned the computer. 1099's in the record? It was in the record of the lower court proceeding. It is not in the appellate record. There was testimony from Mr. Tarwater, however, on that point. But I think the critical issue is the laptops that Mr. Tarwater had while he was still in Roadrunner's employment were stolen. Yes, that's a bad fact. It's a bad visual on this case, and I believe that it did unduly prejudice the district judge against Mr. Tarwater, or perhaps he was correct to be prejudiced. But in any event, the computers that he owned at the time, or that he had at the time that he worked for Roadrunner, were stolen before the case was filed. And, yes, there were discussions that were. He had been alerted, though, hadn't he? Before they were stolen, he had been alerted by counsel for the other side, basically to preserve all electronic communications. Well, he was requested to return one of the computers for the purpose of counsel for Roadrunner making an image, a forensic image of it. And that became the subject of a dialogue between the attorney he retained and Roadrunner's counsel about how they could agree upon terms for this imaging. And, in fact, and this is in the record, there is a letter from Mr. Tarwater's attorney. It predates the filing of the litigation in which she offered to outright return one of the computers to Roadrunner and to commission a forensic image of the other, the one that Mr. Tarwater believed he owned, so that Roadrunner's information, if there was any, could be located, found, it would be returned to Roadrunner. And then before that could take place, the computers, the laptops were stolen. Well, that was not going to take place because counsel for Roadrunner rejected that offer. And it was the day that he rejected, counsel rejected that offer, which ultimately, I will point out, is what happened with the laptop that ultimately Mr. Tarwater purchased that was part of the case, that was the subject of discussion in the case. But that wasn't going to take place because it was rejected. And it was rejected for reasons that I submit are rather flimsy because in the letter that counsel wrote, and this is in the record, the letter that counsel for Roadrunner wrote, he said, we won't agree to that because it involves the destruction of evidence, which was simply not true. The offer was you can take, we will have a third party upon whom we agree do a forensic image of the computer. Any of your information that is on there will be returned to you, and it will be deleted from the computer. So the point of that exercise in counsel's mind, I'm sure, was you're worried about your confidential information falling into the wrong hands or Mr. Tarwater continuing to access it. This is our proposal for dealing with that. Unfortunately, that offer was rejected. Had it been accepted, I don't think we'd be here today, but it was rejected. And unfortunately, the day after, the original, what we call the original laptops were stolen. Okay, so then he gets some replacement laptops. That's right. Then he gets the replacement. Well, actually, he purchased a laptop for his wife in July of that year, about a month before he left Roadrunner. In December of that year, after he left Roadrunner and took the job with Custom, his new employer, he purchased a replacement for himself. So that laptop was the one that became the focal point for the litigation. But what is interesting about the facts is that Roadrunner filed its lawsuit in October of 2010, two months after Mr. Tarwater left. It waited until April of 2011 to commence any discovery, no discovery at all. To the extent that they were worried about electronic devices, I would have expected them to be alone. Well, but the focus is really on Mr. Tarwater's conduct and whether he willfully spoliated evidence, knowing that he was supposed to preserve them, right? And so the district court made findings that he willfully did that. Even after he got the replacement laptops, he made no effort by his own testimony to attempt to preserve evidence. So what do we do with that finding? Okay, yes, Your Honor, you're right. The court did make that finding. And that finding, I submit, was clearly erroneous because here was the evidence to back that up. Mr. Tarwater was never directed by the other side, by a judge, by Magistrate Judge Goldman, or anyone else, don't delete material from your new laptop. If you buy a new laptop, don't delete anything from it. And, by the way, don't use it because we contend that by using it, you're going to be spoliating evidence. He was never given that direction. They waited until April of 2011, six months before they even took discovery, and it was July of 2011 before their motion to compel came before the Magistrate Judge, who found, by the way, that their request was vastly overbroad. It was overreaching. He said, you're not going to go into Mr. Tarwater's devices and take a wholesale image. You're not going to look at them and discover anything you want. You can't go on a fishing expedition. But what I will allow is for a forensic expert to be appointed, to be agreed upon, and you two, the parties, agree upon a protocol whereby only relevant evidence will be discovered. And the result of that, of course, was that there was no relevant evidence. If you see the HIT report, which is in the record, there was really nothing on the customers that Roadrunner identified, the documents that they said comprised their trade secrets. There was nothing. So, apparently, maybe some of that information existed on the original computers that were stolen. We don't know. But the point is, this laptop, the new laptops, were never the subject of a preservation demand, never the subject of a preservation order, and Magistrate Judge Goldman, contrary to the representations that were made to the district judge, he never accused Mr. Tarwater of doing anything improper. In fact, he said, to the extent that you weren't under a preservation demand before, I'm placing you under an order. Now, this is July of 2011, pertaining to the new replacement laptops. He said, I'm placing you under an order to preserve everything, all of your USB devices, your CD-ROMs, your computers, your cell phone, whatever. And he concluded with the statement, anything else turns up missing, there's going to be problems. And one of the ways in which this case went wrong, I believe, in the district court, was Roadrunner parlayed that statement into, essentially, and they tried to couch it as an order by the magistrate judge to don't delete anything, preserve everything, don't alter anything. But nobody ever told Mr. Tarwater, don't operate your computers. And essentially, that's what this was about. The motion that they brought before the district court sought to sanction him for using his computer. I thought the report found that items had been deleted from the computers. The forensic, yes, Your Honor, that's true. The forensic expert found that some items had been deleted. But in his, at the end of his report, he said, and he talked at great length in his report, probably 80% of it was devoted to how items can be deleted or altered given the use of the computer over time. De-fragmentation, automated system processes, software updates. He had a whole list of things that could cause that to happen. But ultimately, he concluded that most, if not all, of the data that was deleted was the result of automated system processes. He never accused Mr. Tarwater of intentionally doing anything to spoliate evidence. His report was focused upon the fact that, and he testified to this at the hearing, he testified that if you use your computer, if you turn it off and on, these things are going to happen. And that can't be avoided. And at a cross-examination, I think he was asked, do you have a computer? Yes, I do. So these kinds of things happen on your computer as well, right? And he admitted that was true. So at the end of the day, the forensic expert really didn't add very much. And when he was questioned at the evidentiary hearing, I found it very interesting that he was never asked a question about, in his report he did talk about deletions, but he was never asked about that. The questions he was asked all had to do with these automated processes and the fact that if you continue to use a computer, things are going to be lost. You say he was never asked on direct. He was never asked at all. Was he asked on cross? Not specifically about that. Well, isn't that the duty of somebody cross-examining the case? I mean, because there's no questions, you know, you can't lay all the fault on the direct. They frame the direct the way they want to, and it's up to the lawyer cross-examining to bring out all these things, isn't it? And that was not done, and I was not the trial attorney at that time. Well, I'm not following. Just, you know, the record is what it is, and there was an opportunity to cross, and it didn't happen, right? Right, right. And that's one of the problems with the record that we have. In this three-some-odd-hour evidentiary hearing, a lot of things were never established. There are just huge gaps here. And one of the most troubling things about this case to me is there was no showing of any prejudice to Roadrunner as a result of whatever was deleted or lost or altered because we don't know what it was. Let me ask you, you know, I want to clarify one thing. I want to make sure I understand the facts properly. But you said that, I guess, before he left Roadrunner, he had bought his wife a new laptop? That's correct. Is that right? That's correct, yes. Was there any evidence at all that he moved data from the two computers that he lost to his wife's laptop? None at all, none at all. And, in fact, that was one of the tasks of the forensic expert according to the protocol upon which the parties agreed and the magistrate judge entered as an order. He was to search for evidence that external devices had been attached to the computer so as to transfer data. And, apparently, his report is silent on that. So I take it he found no such evidence because, in other respects, it is very thorough. I mean, setting aside the expert, there's testimony. And your client testified that he never made any efforts to preserve data. But Judge Goldman said it's a strict order to preserve data. So even if we, you know, look at the evidence in the light most favorable to you with regard to the deletion and automated alterations and all that that would be the subject of expert issues, he didn't preserve data. Isn't the record pretty clear on that? He didn't have a forensic image done of the computer, which probably, in hindsight, was the thing that should have been done. And it should have been done early on. But that never happened. And, in fact, until he was deposed in the case a year, over a year after it was filed, he didn't really have an understanding of how that worked. Yes, he was represented by counsel, but he didn't really understand what a forensic image involved. He was so unschooled until this case, of course, about these issues that he thought that if he used his computer, anything that was ever put on there would always be there, which I think is kind of a lay person's understanding, certainly the understanding of someone who worked himself up from being a dock worker at a shipping company to being vice president of sales. He really did not understand that. But he was very well educated at his deposition by counsel for Roadrunner, who repeatedly told him that just operating the computer, just turning it off and on, can cause data to be corrupted. So I think, in fairness, the testimony that he gave at the time of the evidentiary hearing has to be placed in light of what happened less than a week before, because six days before that hearing was noticed, he was deposed in the case, and he was told that, you know, you've been spoiling evidence. In fact, it appeared from the deposition that this was the case that counsel for Roadrunner intended to make all along, and I'll read from page 124 of volume 2 of the excerpts of record. Counsel questioning Mr. Tarwater says, the key is what we wanted was to see what data and documents were on those computers at a certain point in time. We can't recover them now because you used the computers. Because you used the computers. Of course he used his computer. I mean, why buy it in December of 2010 if he wasn't going to use it? Let me ask you one last question. I have one last question for you. You sent us a 28-J letter noting that Rule 37E had been amended, effective December 15th, last year. Putting aside for a minute whether or not it should even apply here, because there's a certain test you have to go through to make that determination, but let's assume that it should apply here. One of the factors that the courts to consider in deciding whether or not to impose sanctions under that rule is the following. It says, only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation. Intent. My question is, did the district court here or the findings here make a finding of intent? Absolutely not. He did say the conduct was willful, but it appears to me from reading his order, what he meant by willful was deliberate in terms of you deliberately continued to operate the computer. You deliberately deleted some e-mails of what relevance, if any, we don't know and never will. Okay. Thank you. I'll give you a minute for rebuttal. Thank you. I appreciate that. Thank you, Your Honors. Your Honors, may it please the court, Eric Rumbaugh for respondent, cross-appellant, Roadrunner Transportation Services, with me at counsel's table is my partner, Amy Brooks. With the court's indulgence, I'm going to jump to something that came up at the end. I'm going to read from Judge Goldman's order, which I think has been mischaracterized. You're talking about the order of May 31, 2012? August 31, 2011. This is the magistrate judge's discovery order. Oh, okay. I'm reading from page 16, starting at line 21. And first of all, I'm going to put Tarwater under an order right now to preserve. Now, stop. Counsel just said this has been mischaracterized as an order by Judge Goldman. Well, it is because he called it an order. First of all, I'm going to put Tarwater under an order right now to preserve. If he should have, and I'm sure there's an implicit order to preserve, but now he's under a strict order to preserve all data, all storage devices, media, U.S. devices, hard drives, flash drives, computers, laptops, notebooks, networks, disks, C-ROMs, and PDAs that he's ever used since January 1, 2009. Okay. Anything else turns up missing, there's going to be problems. There was a, there was a, I think Judge Wynn was reading from the order when she asked a question, but the characterization of the magistrate judge's order was wrong. It was a strict order. Second, I wanted to say. What does it say that he shouldn't use it? He said he has to preserve all data. Well, but what does it say don't use your computer? It didn't say don't use all computers. Well, how would anybody know? I would not know that. If you read this order, somebody was telling me preserve, it doesn't say don't use. Okay. Second. Did somebody explain to him that if he used that computer, he would be effectively deleting information? He was told, Justice, that. No, I'm not a justice. I'm a judge. He was told, Judge, not to delete anything. And I want to read next from. Where was he told not to use the computer? He was not, well, we told him repeatedly. Where did the magistrate judge tell him not to use the computer? He said preserve all data. That's what he said. The answer to your question is he did not. Now, I want to read from the third-party expert's report. And I'm going to cite to paragraphs 18, 20, and 21. So the key from the expert on the expert's live testimony was the punchline from the magistrate or from the third-party neutral expert's report on live testimony was, I can't tell the judge what was on this computer on any given date. That is exactly what we were interested in. Not is there information on this computer now. What was there on any date in the past? Because it could have moved or been transferred or printed or something else. Mr. Tarwater clearly had our data on the original computers, the first two computers. What was on the computers later on? And what the expert said on live testimony was, I can't tell the trial judge. And the trial judge relied on that. There had been such spoliation because files were deleted on an ongoing basis that the expert said, I can't tell the court what was on this computer on any date in the past. That's the punchline from the expert's report. Now, I'm reading from the expert's written report. Paragraph 18 is a table showing deletions from the two replacement laptops. And what the expert says, paragraph 18, is that for the John computer, Mr. Tarwater's computer, from 9-11-11 through 10-9-11. And the computer was submitted for imaging on 10-9-11. So this is after Magistrate Goldman said, preserve all data. Anything else turns up missing, there's going to be problems. After that, John deleted 1,802 files from the computer. But I think what Judge Farias is appropriately concerned about, did those deletions occur by a non-autonomic act of pushing the delete button, or did they occur by means of just turning on the computer? The answer would be it doesn't matter if you delete something. Well, it does matter. And the magistrate, excuse me, the expert in paragraphs 20 and 21 answers that question. So I'm going to read from paragraph 20 of the expert's report. He answers my question. I'm going to answer your question. Okay. Paragraph 20, so talking about the deletions, and basically what the expert said is at least many of the John deletions were using a non-standard fix, a non-standard method of deletion. And I'm reading from the expert report, paragraph 20. And the expert had just noted the recycle bins are empty, which is unusual. Quote, on John VIO, the recycle bin of user John is completely empty. There are not even entries for files that were deleted but cannot be recovered. In my experience, it is unlikely that a typical user does not have a single deleted file in the recycle bin. This typically indicates that the user deleted files by a method that bypasses the recycle bin. Then, paragraph 21, the expert says that he looked at unallocated clusters on each machine to see if he could find deleted files in the unallocated clusters. And he finds hits on the two laptops. And then the expert concludes in paragraph 21, and I quote, none of these were for files in user John's home directory, further reinforcing the conclusion that any file deletions were done in a manner that bypassed the recycle bin. So what we have is an ongoing duty to preserve that was created by litigation, by a document production request. Contrary to what counsel said, April 13, 2011, we had been negotiating a protocol for reviewing the devices. We sent a letter to predecessor counsel talking about we were trying to negotiate a protective order. And we said in the April 11, 2011 letter, we want to forensically image and inspect all of John's electronic storage devices. So the idea that we never said anything about the other devices isn't true. We'd been in constant communication trying to negotiate a protocol as reflected in that long letter about a protective order. But, so there was exfoliation on an ongoing basis which might have been. Okay, you know, hold your thought right there. We'll get back to that. The question is, does all this you've been reciting to us indicate specific deletions of items or deletions merely by means of turning on the computer? No. So it did not answer my question. What I'm saying is that the expert with respect to the John deletions says that at least 1,802 of them, which occurred after the magistrate's order, occurred in a nonstandard way that most users wouldn't use that bypassed the recycle bin and rendered even the name of the file unrecoverable. Okay, does nonstandard means is the record will indicate that that means he specifically deleted rather than deletion by turning on the computer? The expert didn't say that. All right, let me ask you this. Will the record indicate that bypassing the recycling bin is a means of specifically deleting versus deletion by means of merely turning on the computer? There's nothing in the record where that specific question is asked. You see the problem we're having is that we have to get to the bottom of what actually occurred here. And it's one thing. Frankly, I don't appreciate that he doesn't have some sophistication about computers, but that doesn't mean he has a sophistication that rises to the level that he knows that when he merely turns on his computer, it deletes a bunch of stuff. And his judge said, I wouldn't know that. The trial judge, Judge Guilford, asked Mr. Tarwater about this and said what was your understanding of what preserve meant. And predecessor counsel waived privilege and asked his own client questions on the record in open court, what did my office tell you what preserve meant? Because Mr. Tarwater was saying preserve, I don't know what preserve means. And what Mr. Tarwater testified on direct examination from his own attorney waiving privilege was, did my office tell you not to delete any files? Mr. Tarwater said yes. And that was dispositive of the trial court that this was intentional. All this time he'd been deleting. As Judge Wynn observed, he'd been told over and over again by us, don't delete anything. Don't operate the computer. You're going to be spoiling evidence. He said, I didn't understand what this meant. Although we kept sending him letters saying you need to make a forensic image, you need to make a forensic image, you need to make a forensic image. If you won't make a forensic image, we'll just kill you. Could you slow down? Sure. You're just going 90 miles an hour. You may be making some good points, but you're losing it. He had been told over and over again. Slow down. He had been told over and over again not to delete any files by us. But he kept deleting and admitted in his deposition and then again in open court, I never took any efforts and made any steps to preserve. But he kept deleting. But when he says deleting, he kept hitting the delete button. The delete button. Kept hitting the delete button. Kept hitting the delete button. And that's what he testified to? That's what he testified to. He deleted e-mails and files on an ongoing basis. And the operation of the computer over time rendered those files unrecoverable. That's some, but not all of his deletions was the I hit the delete button. So he kept saying, I didn't know what preserve meant. I didn't know what preserving data meant. And so the judge asked him. And his own lawyer asked him on direct examination, what did our office tell you? And he said, don't delete any files. That was Mr. Tarwater's explanation. So I've got two. And up to the date he turned over the replacement laptops, he and his wife deleted files. Even after we told him don't delete, even after his lawyer told him what preserve means, means don't delete files, and even after Magistrate Goldman said you have to preserve data, he kept deleting up until the day he turned them over. So it wasn't merely just automatic functions by operating the computer. Let me ask you this, Counsel. With regard to the amendment to Federal Rule Procedure 37, Counsel indicated that the findings aren't specific enough. What's your view on that? Well, first of all, we would submit that the new Rule 37 doesn't apply. This case was over for years before the new rule. We found one case that deals with retroactive application, and it was a Stinson v. City of New York case. I can give the site if the Court would like, where the trial court said it's not just or practical to apply a new rule because this case had already been briefed. Here, not only has the case been briefed. Well, who should make the determination as to whether it's just or practicable to apply the new rules, the circuit or the district court in the first instance? Well, the district court can't because the case was over for years before the new rule. Right. No, I understand that. Should we remand it to the district court to determine whether it's just and practical, or do we reach that issue in the first instance? I would say the thing speaks for itself. The case has been over for years before a new rule. That doesn't mean the rule shouldn't apply. This would be, I would submit, the polar opposite of just and practicable, to apply a new rule to an old case. But coming back to the— Wait a minute. How much did he get sanctioned for? I think it was $100,000 in damages and $325,000— So $400,000-plus. Plus you're appealing the fact that you didn't get more money. Yes. So back to your question, Judge Winn. In the ruling, especially in the ruling on default and especially in the ruling on the motion for a new trial, Judge Guilford made I think it's nine pages of findings of willfulness. No, I understand that. But understandably, the focus really was on willful conduct, not intent to deprive the other side of litigation evidence, essentially. So given the amount of damages in this case, or I guess the amount of sanctions imposed, the consequence to him and the lack of a specific finding of intent, I'm wondering if you should send it back to the district courts so that he can make a determination, make the first call as to whether it's just impractical to apply the new rule in this case and maybe perhaps even make findings with regard to intent. I would submit that this court could simply find that this is what intent looks like. You delete after opposing counsel and your own lawyer told you not to delete, and then after a magistrate judge says you have a duty to preserve data— We don't do that. That's not our job. Let me ask you this. In the order, the judge says, because the evidence including Tarwater's own testimony established that Tarwater willfully spoiled evidence. Now, willful is something different than intentional. It's like a non-autonomic action. But when you combine it with spoiled, does spoiled have something inherent in it that moves the dial over, that it's willful and intentional? I think if you read the committee—well, I think yes, Your Honor. And if you combine the long history of the motion for reconsideration, Judge Guilford talked about a fake theft. Even at the end of this case, he was still talking about the problems with the fake theft. If you leave all that aside, you just focus on the 1,802 files deleted in a non-standard manner, bypassing the recycle bin, and making even the name of the file unrecoverable, that attacks the fundamental ability of the trial court to run its court. The magistrate judge gives you an order. You have to preserve data. He goes to a non-standard manner, bypassing the recycle bin, deletes 1,802 files in a way that renders even the name of the file unrecoverable. If that's not intent, then short of a confession, I don't know how you could find intent. That fundamentally undermines the ability of the trial judge to run his or her court. It's literally thumbing—Mr. Tartlewater literally thumbed his nose at the trial court. What he testified—and actually, credibility is an issue here, Your Honors. Judge Guilford raised the issue of credibility in a soliloquy back and forth with predecessor counsel over the exact issue of what the court understands preservation to mean. At one of the later motion hearings, Attorney Jackson tried to say that he had told Mr. Tartlewater only to not delete relevant files, and Judge Guilford stopped him and said, that's not with the testimony, and then we found the actual testimony where, waiving privilege, Attorney Jackson had his client say, we told you to understand preservation duty is not to delete. After his own lawyer told him not to delete, he just deleted willy-nilly, never stopped, and then 1802 filed in a nonstandard way after Magistrate Goldman's order. You had a cross appeal. Did you want to say anything about the cross appeal because you're over your time? Very briefly, the issue of the award of attorney's fees is an abusive discretion standard. There's no rule that attorney's fees can't exceed the amount of damages, and the trial court correctly observed that the California Supreme Court has noted that protection of trade secrets is a fundamental public policy of the state of California, and that was served by this case. With respect to our cross appeal on the issue of damages, we said in our complaint they took clients including A, B, C, and D. Later we say clients, customers, business relationships. As a matter of pleading, including means part of a whole, so that in that one paragraph we said including A, B, C, and D. In later paragraphs we just say clients and customers. I would submit that saying that pleading limits the complaint to A, B, C, and D. Is there a standard on that abusive discretion? No, the standard is de novo. This is a straight legal question. This was not an evidentiary ruling. In fact, all the evidence on damages for all the clients was admitted. So the court admitted all the evidence. It just said as a matter of fact we hadn't pled damages for the other. At the damage hearing we got an evidence on all 45 customers that were taken. We had charts, graphs, and so I would submit it would be a pleading earthquake if the rule is we didn't need to plead any customers that we lost, but the fact that we said including A, B, C, and D, and then in other parts of our complaint we said. How much did you ask for in damages? How much did you ask Judge Guilford to award? I believe I don't have it memorized. I believe it was $1.8 million that were approximately fought. What did you get? $100,000. $100,000. Okay. Thank you, Your Honors. You have a minute or so for rebuttal. I wanted to address a couple of very important considerations I didn't get to talk about earlier. One is the concept of prejudice. In order to award the harshest sanction available, bearing in mind there's a whole panoply of potential sanctions that could have been awarded for whatever conduct Judge Guilford found occurred here, and he chose the harshest one. But the case law in this circuit is very clear that there has to be prejudice to the other party before the harshest sanctions available can be awarded. Well, you made a finding on that, that you deprived them of their primary evidence. But actually it wasn't evidence, Your Honor. That's the problem. It was just some stuff. And the starting point in a spoliation analysis is what was spoiled. To the extent that a party spoils something that is relevant to a claim or defense or is discoverable or is potentially relevant, that is spoliation, of course. But in this case, we don't even know what it was. Well, that's because there was spoliation of it. Of course we don't know. And if he does so willfully, progeny, and I think the words of the case was in bad faith, is in a reasonable inference that he did so because it was pertinent material. Perhaps. However, there was no finding of bad faith in this case. There was a finding of willfulness, I think referring to the fact that Well, it said willful spoliation. And he cites cases that says if we make this determination, it involves willfulness, fraud, and I think bad faith is the word. That's correct. And then he goes on later in the order to elaborate what looks like, walks like, and smells like intent. Isn't that true? I don't think so, Your Honor. I mean, I just, and maybe that was in, that might have been in Judge Guilford's mind. But what I'm saying is the record just does not support that kind of a finding. When you have a record where a relatively unsophisticated litigant, all he did was continue to use his computer, and in the normal course of business, even under the prior version of Rule 37, what he did was not sanctionable because that rule provided that the conduct had to, any, the routine good faith operation of a computer over time that results in the loss of data is not sanctionable. That's all he did. But in any event, the burden of proving prejudice rested with Roadrunner, and that means they had to show some nexus. The cases all talk about the concept there has to be a nexus between the conduct that is being sanctioned and the issues in the case. In this case, there was no demonstration of any kind. There was any relationship at all, and therefore they simply did not meet their burden of showing prejudice or a nexus. I want to talk just briefly about the issue of lesser sanctions because the district judge really gave— And now you're over your time, though. I'm sorry? You're over your time. I'm over my time. All right. Thank you. Thank you very much. Thank you. Matter submitted.
judges: Murphy, Paez, Nguyen